COMMONWEALTH of Pennsylvania, Appellee

v.

THOEUN THA, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 6, 2012.

Filed April 2, 2013.

Marissa J. Brumbach, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

BEFORE: SHOGAN, J., WECHT, J., and STRASSBURGER, J.[*]

OPINION BY WECHT, J.

Thouen Tha ["Appellant"] appeals her June 30, 2011 judgment of sentence. On March 21, 2011, a jury convicted Appellant of criminal conspiracy to commit aggravated assault.[1] On June 30, 2011, Appellant was sentenced to five years' probation. We affirm.

The trial court summarized the history of this case as follows:

Testifying through a Cambodian interpreter, the complainant Dany Hang (Hang) recounted that in the early evening of September 22, 2009, she left her apartment in the 5700 block of North 5th Street to retrieve a baby bottle from her car, which was parked on the street. When bending down into the car to find the bottle, she felt something cold against her waist and heard someone say that if she turned around she would be shot. She was then punched and kicked by five people. She saw that three of her assailants were Cambodian and that the other two were black males. From the stand, she identified the Cambodians as Thoeun Tha, Rithy Tha and Thea Tha. She did not recognize the black males and could not remember their faces.

Rithy Tha was the first to punch her. Then the other four people joined in. She fell to the ground after multiple blows and her assailants began to kick her. She called to Vu Cao, her boyfriend, who was in the apartment they shared with her toddler son. She remembered that someone said, "Right now this is all we're going to hit you. Next time we're going to shoot you" and then the five walked away.

Bloodied, Hang stood up, moved toward the intersection, and called out for help; two police officers who happened to be parked in the parking lot of a school at that location heard her cries. Hang directed the two officers' attention to five people walking down the street, indicating that they had assaulted her. She remembers an officer placing Thea Tha in a police car. She fainted and awoke in the hospital.

[*] Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 903(a)(1); 18 Pa.C.S. § 2702(a)(1).

Also testifying through an interpreter, Hang's boyfriend, Vu Cao (Cao), said that when he heard Hang call for him, he looked out from the apartment kitchen window on the second floor and saw five people; two of whom were pulling Hang's hair and punching her. He ran downstairs, deposited the child with the landlord who was on the first floor and went outside. He encountered the police who were responding to Hang's cries and told them that the five people who were walking away had assaulted Hang. He testified that he recognized Thea Tha and Thoeun Tha among the five. From the stand, he identified the males as Rithy Tha, Christopher Thomas and Carlton Finney.

Cao does not know what the police did then. He recalls that Hang was taken away by ambulance and that he was taken to a police station where he gave a statement. Cao knew the three Cambodians because they were the adult children of his former girlfriend, Mao Inn (Inn).

Henry Schoch (PO Schoch) and Nicholas Schoeniger (PO Schoeniger) were the uniformed officers in the marked patrol car in the Lowell Elementary School lot in the 5800 block of 5th Street at the time of the incident. PO Schoch was the driver and PO Schoeniger was seated in the passenger seat. Responding to Hang's calls for help, PO Schoch drove out of the lot to 5th and Grange Streets where they found Hang. PO Schoch attempted to speak to Hang who pointed to the five defendants who were walking away. Almost immediately, Cao appeared and he too pointed to the departing five. As they walked away, the five were looking in PO Shoch's direction. There were no other pedestrians on the street. After ordering the group to stop, PO Schoeniger apprehended four of the five: Rithy Tha, Thea Tha, Carl-

ton Finney and Christopher Thomas. The police recovered a gun from Carlton Finney.

PO Schoch did not know the identity of the fifth person who walked away; he could say only that she was an Asian female. PO Schoeniger knew only that the person was a female. The police did not pursue the departing female because their "hands were full" with the other four defendants, the witness and the victim.

Cao and Hang also testified that two days before the September 22 incident, there had been a confrontation between Mao Inn and Hang at a temple where Cao, Hang and Inn worshiped. The dispute arose out of the relationship that Cao had with Inn before he became Hang's boyfriend. That relationship also accounted for Cao's personal knowledge of Inn's adult children, defendants Thea Tha, Rithy Tha and [A]ppellant Thoeun Tha.

[Appellant] Thoeun Tha testified that she was not at the scene of the crime. Defendant Thea Tha testified that she alone was responsible for the attack on Hang and none of the other defendants were involved. None of the other defendants took the stand.

Regarding the assault and conspiracy charges, the verdict sheet asked the jury to answer with respect to each defendant the question whether he or she was guilty of (a) aggravated assault, (b) simple assault and (c) criminal conspiracy to commit aggravated assault.

Defense counsel made various objections during the trial. First, there was a motion for mistrial on the ground that the Commonwealth had committed a discovery violation by failing to turn over an affidavit in support of an arrest warrant. The court denied this motion,

but barred its admission into evidence. Second, the court denied a motion for mistrial on the ground that a photo identification of Thoeun Tha by Hang was unduly suggestive. Third, the court denied a motion for mistrial stemming from the Commonwealth's use of the word "assault" during her examination of witnesses. Fourth, over objection, the court allowed Detective Steven Grace to read a statement that Hang had given a few days before she testified at trial. Finally, the court rejected defense objections to jury charges on the photo identification evidence and on "flight."

Trial Court Opinion ["T.C.O."], 12/1/11, at 3–7 (citations to Notes of Testimony omitted).

Appellant was found guilty of criminal conspiracy to commit aggravated assault. On March 29, 2011, Appellant filed post-verdict motions, which were denied on April 27, 2011. On June 30, 2011, Appellant was sentenced to five years' probation. On July 15, 2011, Appellant filed a timely notice of appeal. Appellant submitted a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed an opinion pursuant to Rule 1925(a).

Appellant raises the following issues for our review:

1. Whether the evidence is insufficient to support a conviction on the charge [of] criminal conspiracy (aggravated assault) conviction [sic] predicated upon an overt act toward aggravated assault when defendant Thouen Tha was not convicted of any other crime and the co-defendants were convicted of simple assault and conspiracy (aggravated assault).

2. Whether the verdict against Thoeun Tha is inconsistent compared to the verdict rendered against the four co-defendants or in the alternative against the weight of the evidence; or whether the conspiracy should have been graded as a misdemeanor.

3. Whether the court erred in failing to grant a mistrial once it was determined, during trial, that the identification procedure used by the Police Department against Thouen Tha was unduly suggestive.

a. The court erred in failing to grant a severance of the matter against defendant Thoeun Tha since the jury could not separate their use of the identifications against the five code-fendants.

b. The court erred in failing to find, sua sponte, at trial when information was revealed during the Commonwealth's case-in-chief that there [were] identification issues, ineffective assistance of counsel, related to the suggestive identification, and the failure to litigate a pre-trial motion upon the same, which would have precluded this prejudicial evidence from being introduced before the jury[,] and then prevented further error and taint upon the jury which impacted Thouen Tha'[s] right to due process and a fair trial.

4. Whether the court erred in instructing the jury on (1) how to use the identification evidence against defendant Thouen Tha and (2) giving the flight charge as to Thoeun Tha.

5. Whether the court erred in failing to preclude the [C]ommonwealth from referring to the incident repeatedly throughout the trial as an "assault".

Appellant's Brief at 3.

Appellant's first issue presents a challenge to the sufficiency of the evidence. A claim challenging the sufficiency of the evidence presents a question of law. *Com-*

*monwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has observed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy,* 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

▇▇▇ Appellant asserts that the evidence was insufficient to sustain a conviction for criminal conspiracy to commit aggravated assault. A criminal conspiracy conviction requires proof of:

(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, *i.e.,* the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

*Commonwealth v. Galindes,* 786 A.2d 1004, 1010 (Pa.Super.2001) (quoting *Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1162 (2000)). Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. *Commonwealth v. French,* 396 Pa.Super. 436, 578 A.2d 1292, 1294 (1990). "These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail." *Id.* Aggravated assault, the crime in question, occurs when a person attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1).

Appellant claims that the evidence was insufficient to sustain her conviction because she was not present during the attack and the Commonwealth failed to present reliable testimony that established her presence. Appellant's Brief at 10. Appellant also argues that, because she was found not guilty of aggravated assault, the evidence was insufficient to sustain the conviction for criminal conspiracy to commit aggravated assault. *Id.* at 11. Finally, Appellant argues that the evidence is insufficient because the co-conspirators voluntarily stopped beating the victim and did not cause serious bodily injury. *Id.* at 12–13.

▇▇▇ Appellant's arguments to the contrary notwithstanding, the Commonwealth presented evidence establishing Appellant's presence during the attack. The

testimony of the victim established that the group approached the victim from behind, that one of the assailants pressed a cold metal object against the victim's side, and that one of the assailants told the victim that if she turned around she would be shot. Notes of Testimony ["N.T."], 3/11/11, at 20–21. The victim testified that the group members punched her face, arms, and lower back until she collapsed to the ground. *Id.* at 21–28. After the victim fell to the ground, group members kicked the victim's head and the side of her body. *Id.* at 28–29. The victim's boyfriend, who was familiar with Appellant prior to the attack and observed the attack from his apartment window, identified Appellant as a participant in the attack.[2] N.T., 3/14/11, 45–48. After the attack, the group of assailants left the scene together. N.T., 3/11/11, at 29.

Viewing the record in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to support Appellant's conviction for criminal conspiracy to commit aggravated assault. *See Commonwealth v. French,* 396 Pa.Super. 436, 578 A.2d 1292, 1294 (1990) (evidence sufficient to prove conspiracy to commit aggravated assault where the appellant and a group of relatives and friends approached the victim together, knocked the victim to the ground, continued to beat the victim, and attacked police when they arrived); *see also Commonwealth v. Poland,* 26 A.3d 518, 519–20 (Pa.Super.2011) (evidence sufficient to prove conspiracy to commit aggravated assault where the appellant and a group of individuals approached the victim as a group; battered the victim's face, knocking out a tooth; and fled the scene together).

■■ Appellant argues that the evidence was insufficient to sustain a conviction for conspiracy to commit aggravated assault because she was not convicted of aggravated assault. We disagree. Pennsylvania law does not require consistent verdicts:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment.

*Commonwealth v. Stokes,* 38 A.3d 846, 855 (Pa.Super.2011) (quoting *Commonwealth v. Frisbie,* 889 A.2d 1271, 1273 (Pa.Super.2005) (internal citations omitted)). As a matter of law, Appellant's acquittal on the aggravated assault charge does not preclude a conviction on the criminal conspiracy charge.

■■ Appellant argues that the evidence was insufficient to sustain her conviction because the Commonwealth failed to establish that Appellant caused serious bodily injury. However, commission of the underlying crime is not an element of criminal conspiracy. "Conspiracy to commit a crime and the underlying crime itself are two entirely separate offenses with separate elements required for each." *Commonwealth v. Johnson,* 719 A.2d 778, 791 (Pa.Super.1998). A conviction for conspiracy requires only an intent to commit a crime, an agreement with a co-conspirator, and an overt act in furtherance of the conspiracy. *Galindes,* 786 A.2d at 1010. To sustain the conviction for criminal conspiracy, it need not be established that Appellant caused serious bodily injury. Appellant's argument fails.

---

**2.** While the victim also identified Appellant, the jury was instructed "to disregard any testimony regarding the identification of the [Appellant] that was made by [the victim]" due to an unduly suggestive photo identification. N.T., 3/18/11, at 22–23.

■ Appellant's next issue presents three separate arguments. Appellant asserts that her verdict is inconsistent with the verdicts of her co-defendants, that her conviction is against the weight of the evidence, and that the conspiracy charge should have been graded as a misdemeanor. In her Rule 1925(b) statement of errors complained of on appeal, Appellant failed to present a weight of the evidence argument. Accordingly, that argument is waived. *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

■ Appellant's argument regarding inconsistent verdicts is unavailing. Appellant maintains that the jury's verdict acquitting Appellant of simple assault while finding her co-defendants guilty of this crime indicates that the jury found that Appellant did not engage in the assault or in the conspiracy. Appellant's Brief at 14. As we have stated, inconsistent verdicts are neither contrary to law nor a basis for reversal. *Stokes,* 38 A.3d at 855. A defendant may be found guilty of conspiracy without having been found guilty of committing the underlying crime. *Johnson,* 719 A.2d at 791. We also reaffirm that "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Bricker,* 397 Pa.Super. 457, 580 A.2d 388, 389 (1990). No relief is due.

■ Appellant argues that the conspiracy charge should have been graded as a misdemeanor. Appellant relies on a single case for support: *Commonwealth v. Riley,* 811 A.2d 610 (Pa.Super.2002). In *Riley,* the trial court failed to provide the jury with a verdict slip indicating the crime underlying the conspiracy charge. *Id.* at 617–21. The appellant in *Riley* was charged with two crimes, the lesser graded offense of theft and the higher graded

offense of burglary. *Id.* at 621. We found that, to avoid prejudice, the ambiguity as to which of the two crimes supported the appellant's conspiracy conviction had to be resolved in favor of the appellant. *Id.* at 619–621. In the case before us, the verdict slip did not contain an ambiguity. The slip specifically stated that Appellant was charged with "conspiracy to commit aggravated assault." Verdict Slip, 3/18/11. Aggravated assault is graded as a felony. *See* 18 Pa.C.S.A. § 2702(b). Consequently, the associated conspiracy charge properly was graded as a felony. *See* 18 Pa.C.S.A. § 905(a). *Riley* is inapplicable. Appellant's argument is unavailing.

In her third issue, Appellant argues that the trial court erred in failing to grant a mistrial because the identification procedure was unduly suggestive. Appellant again presents three separate arguments within a single issue. Appellant argues that it was error not to grant a mistrial, that it was error not to grant severance of Appellant's case from her co-conspirators' cases, and that it was error for the trial court not to find Appellant's counsel ineffective, *sua sponte.* All of these claims fail.

■ Appellant's argument that the trial court erred in failing to grant a mistrial is waived. The Commonwealth argues that Appellant failed to object to the offending testimony until the day after the court ruled that it would issue a cautionary instruction. Commonwealth's Brief at 12–13. Indeed, Appellant provides no citation in her brief to the offending evidence nor to any objection made contemporaneously with the identification testimony. Rather, Appellant cites her oral request for a motion for judgment of acquittal, presented after the offending testimony, and her request for a mistrial, presented the following day. Appellant's Brief at 18–19 (citing N.T., 3/16/11 Vol.1, at 12–15; N.T., 3/17/11,

7, 11–12).[3] Not only did Appellant's counsel fail to object during the testimony at issue; she agreed to the trial court's proposed curative instruction in lieu of granting the motion for judgment of acquittal. N.T., 3/16/11 Vol.1, at 12–15. Then, the following day, she asked for a mistrial. N.T., 3/17/11, 6–12, 153.

We have long held that "[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." *Commonwealth v. Pearson,* 454 Pa.Super. 313, 685 A.2d 551, 555 (1996) (citing Pa. R.A.P. 302(a); *Commonwealth v. Burkholder,* 528 Pa. 119, 595 A.2d 59 (1991)). Further, even if Appellant did provide a contemporaneous objection, her failure to cite to that objection renders her claim unreviewable. Pa.R.A.P. 2119(e); Pa. R.A.P. 2117(c) (where an issue is not reviewable unless raised or preserved below, brief must set forth specific references to the places in the record where the matter appears to show that the question was timely and properly raised below so as to preserve the issue on appeal). Appellant failed to lodge an objection contemporaneous to the testimony and/or has failed to provide this Court with a citation to that objection. Either way, Appellant's argument for a mistrial is waived.

▮▮▮ In her third issue, Appellant argues that the trial court erred in failing to grant a request to sever Appellant's trial from that of her co-defendants. While Appellant presents this issue in her statement of questions, she fails to make an argument in her brief that severance was necessary. Failure to present or develop an argument in support of a claim causes it to be waived. *J.J. DeLuca Co., Inc. v. Toll*

*Naval Asso.,* 56 A.3d 402, 419 (Pa.Super.2012), *reargument denied* (Dec. 20, 2012) (citing Pa.R.A.P. 2119(a), (b)). Appellant's issue regarding severance is barred by waiver.

▮▮▮ Finally, Appellant argues that her trial counsel was ineffective and that the trial court should have raised this issue *sua sponte.* Appellant presents no supportive case law for this position. *See* Appellant's Brief at 21. Generally, claims of trial counsel's ineffectiveness are addressed only on collateral review pursuant to the Post–Conviction Relief Act ["PCRA"].[4] *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 738 (2002). Appellant's claim fails, without prejudice to her right to raise the matter in a petition under the PCRA.

▮▮▮ In her fourth issue, Appellant asserts that the trial court erred by instructing the jury regarding the identification evidence and by providing a jury charge regarding flight. We begin with Appellant's claim that the trial court erred in providing a curative instruction regarding Appellant's identification. The Commonwealth avers that this claim is waived. Commonwealth's Brief at 16–17. As noted, Appellant agreed to the curative instruction. N.T., 3/16/11 Vol.1, at 12–15. In fact, Appellant asked the trial court to repeat the instruction a second time. N.T., 3/17/11, 166–67. Because Appellant did not object to the curative instruction, this claim is waived. *Commonwealth v. Hodge,* 270 Pa.Super. 232, 411 A.2d 503, 506 n. 8 (1979) ("[F]ailure to object to the [jury] instructions at trial constituted a waiver of that claim.").

---

**3.** We note that there are two volumes of Notes of Testimony dated 3/16/11 and labeled "Volume 1." For identification purposes, we refer to the shorter volume of testimony from that date, containing 37 pages, as "Vol.1."

We refer to the longer volume of testimony, containing 151 pages, as "Vol.2."

**4.** 42 Pa.C.S.A. §§ 9541–46.

Within her fourth issue, Appellant asserts that the trial court erred in instructing the jury regarding Appellant's flight from the scene of the crime. "[W]e are mindful that the trial court has broad discretion in phrasing its instructions as long as it presents the law to the jury clearly, adequately, and accurately." *Commonwealth v. Garcia*, 847 A.2d 67, 73 (Pa.Super.2004), *aff'd*, 585 Pa. 160, 888 A.2d 633 (2005). A flight instruction is proper when:

> a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred.

*Commonwealth v. Harvey*, 514 Pa. 531, 526 A.2d 330, 334 (1987). "A defendant's knowledge may be inferred from the circumstances attendant [to] his flight." *Commonwealth v. Johnson*, 576 Pa. 23, 838 A.2d 663, 681 (2003).

Appellant argues that the flight charge was improper because "undisputed testimony was [*sic*] that the codefendants were walking down the street, and a fifth person continued walking down the street and was neither pursued by the police or [*sic*] acted in a suspicious manner. As such, no evidence suggesting that Appellant made any effort to evade police [*sic*]." Appellant's Brief at 26. In making this argument, Appellant disregards testimony heard and apparently credited by the jury.

Officer Henry Schoch testified that he and his partner were parked in a nearby lot when he heard screams for help. N.T., 3/15/11, at 73. Officer Schoch drove to the scene of the crime, where he observed the victim bleeding from her face and the group of defendants walking southbound. *Id.* The victim and her boyfriend indicated that her attackers were walking south-

bound. *Id.* at 74. Officer Schoch testified that there was no southbound pedestrian traffic other than the five individuals. *Id.* Officer Schoch's partner, Officer Nicholas Schoeniger, testified that he observed the five defendants walking southbound and that he yelled, "Stop, police." N.T., 3/16/11 Vol.2, at 90. Four of the defendants obeyed and stopped. *Id.* Officer Schoch testified that he and his partner were unable to stop Appellant because they "had [their] hands full." N.T., 3/15/11, at 78. Appellant continued walking southbound. *Id.*; N.T., 3/16/11 Vol.2, at 96.

The evidence supported the trial court's instruction. A police officer requested Appellant to stop as she was walking away from the battered victim. Rather than stop, Appellant continued walking. The trial court did not abuse its discretion in giving the flight charge to the jury. *Harvey*, 526 A.2d at 334.

In her final issue, Appellant asserts that it was prejudicial error to allow the Commonwealth to refer to the incident throughout trial as an "assault." Appellant argues that, by referring to the incident as an assault, the Commonwealth "impact[ed] the juries [*sic*] ability to associate this incident with anything but an assault." Appellant's Brief at 30. Appellant further maintains that the term was "highly inflammatory," warranting a new trial. *Id.* Appellant cites no case law to support her position. Appellant acknowledges *Commonwealth v. Solomon*, 25 A.3d 380 (Pa.Super.2011), a case cited by the trial court to rebut Appellant's argument, but does nothing to distinguish that or the other applicable authorities relied upon below. Failure properly to develop an argument with citations to relevant legal authority renders the issue unreviewable and will cause the issue to be waived. *Commonwealth v. Spotz*, 610 Pa. 17, 18 A.3d

244, 324–326 (2011). Accordingly, Appellant's final issue is barred by waiver.

Judgment of sentence affirmed. Jurisdiction relinquished.